UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 3:17-cv-00057-GFVT-EBA |
| V. | ) ) ) | **MEMORANDUM OPINION** |
| RODNEY BALLARD, *et al.*, | ) ) ) | **&** |
| Defendants. | ) ) | **ORDER** |

*** *** *** ***

This matter is before the Court on Plaintiff Human Rights Defense Center's Motion for Attorneys' Fees, Costs and Expenses. In large part, the Court finds Plaintiff's request to be reasonable and appropriate under 42 U.S.C. § 1988. For the reasons that follow, Plaintiff's Motion for Attorneys' Fees is **GRANTED in part** and **DENIED in part**.

I

As part of its mission, Plaintiff Human Rights Defense Center mails publications to prisoners to make them aware of their rights. [R. 66.] In 2016 and 2017, it mailed certain of its publications to prisoners housed in Kentucky Department of Corrections ("KDOC") facilities. *Id.* at 2. After prison staff at KDOC facilities rejected these publications, Human Rights Center brought suit against various KDOC personnel claiming violations of the First Amendment and Fourteenth Amendment, respectively. [*Id.* at 2; R. 69 at 1.]

In July 2019, the parties entered into a settlement agreement on the last of Human Rights Center's claims and the Court entered an order dismissing the case, while retaining jurisdiction in part to address the issue of attorneys' fees. [R. 63.] Under the terms of their settlement agreement, the parties stipulated that Human Rights Center was designated a "prevailing party"

under 42 U.S.C. §1988 and entitled to recover reasonable attorneys' fees and costs incurred in the course of litigation. [R. 66 at 2; R. 62-1.]

Human Rights Center has now moved for attorneys' fees and costs in the amount of $105,001.17 and Defendants have responded in opposition. [R. 66; R. 69.] At issue is whether the amount requested is reasonable and sufficiently supported by the evidence.

## II

### A

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). Under § 1988, a reasonable attorneys' fee "is one calculated on the basis of rates and practices prevailing in the relevant market . . . ." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). Notably, purely clerical or secretarial tasks are not compensable. *Miller v. Davis*, 267 F. Supp. 3d 961, 996–97 (E.D. Ky. 2017) (citing *Jenkins*, 491 U.S. 274, 288 n. 10 (1989)). This encompasses "tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Id.* (citation omitted).

The party seeking attorneys' fees has the burden to adequately document and submit evidence in support of the hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* Relatedly, when a party objects to a requested fee award, the nature of the objection is important. "Where a party raises specific objections . . . a district court should state why it is rejecting them. Even if the defendant raises objections in a generalized manner, a

2

district court has an obligation to review the billing statement and eliminate those portions of the fee which are unreasonable on their face." *Wooldridge v. Marlene Indus. Corp.*, 898 F. 2d 1169, 1176 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).

**B**

Human Rights Center initially requested $102,910.00 in fees in compensation for work performed by six attorneys and four paralegals. [R. 66 at 2; R. 70-3.] It also requested an award of costs in the amount of $2,091.17. [R. 66 at 2.] As set out above, pursuant to the terms of the parties' settlement agreement Defendants acknowledge that Human Rights Center is entitled to attorneys' fees or costs. They argue, however, that certain of Human Rights Center's requests are either (1) outside the scope of what it is entitled to in terms of "reasonable attorneys' fees or costs," or (2) not supported by a sufficient explanation or documentation. [*See* R. 69.] In its reply, Human Rights Center has agreed to withdraw requests for .4 hours of post-deposition work[1] and $39.80 in costs but, on the whole, maintains that its requests are reasonable. [R. 70 at 8.]

Outside of the post-deposition work fees, Defendants object to fees requested for eight different tasks or categories of tasks. [R. 69 at 3–7.] After review of the record and the parties' respective arguments, the Court finds that all eight of these objections are sufficiently specific so as to require further review.

**1**

First, Defendants object to fees charged for time expended on 62.6 hours of pre-litigation

---

[1] Although neither party specifies as to the amount of fees associated with this work, the Court, on review of the record, finds that the .4 hours were completed at a rate of $275.00 and thus the award will be reduced by $110.00. [R. 66-1 at 101.]

3

work "not related to drafting pleadings or developing a case theory." *Id.* at 3–4.  Defendants identify a large swath of disputed entries but fail to offer developed argumentation on this issue. In large part, it appears Defendants conclude that the identified entries did not relate to drafting pleadings or developing a case theory because they occurred before the decision to file a complaint was made.  *Id.* ("[Certain] entries all occurred more than once [sic] year prior to the date the Complaint was filed . . ..").  But they offer no support for the proposition that simply because time entries occurred a certain amount of time before a complaint was filed that the resulting attorneys' fee requests are unreasonable.  Human Rights Center, in response to this objection, argues that this work was "necessary to inform the pre-litigation demand letter . . . and to file an accurate complaint."  [R. 70 at 3.]  The itemized time entries at issue support Human Rights Center's assertion and, thus, the Court finds these fee requests reasonable.

**2**

Next, Defendants argue that the billing entries related to letters or emails sent to inmates or families are unreasonable given that Human Rights Center "failed to explain how these activities were 'necessary to secure the final result obtained from the litigation.'"  [R. 69 at 4 (misciting *Webb v. Board of Educ. Of Dyer Cty.*, 471 U.S. 234, 242 (1985)).]  This is not the standard.  "The question is not whether . . . in hindsight the time expenditure was strictly necessary to obtain the relief achieved.  Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in the pursuit of success at the point in time when the work was performed." *Wooldridge*, 898 F.2d at 1177.

Viewed through the lens of the proper standard, the entries at issue are reasonable.  As explained by Human Rights Center, writing to prisoners and their families was necessary to determine what was happening at KDOC facilities as it related to the alleged improper

4

censorship and rejection of its publications. [R. 70 at 4.] This is certainly a reasonable explanation as it relates to developing a full factual record in order to properly litigate the case.

### 3

Defendants argue that the entries related to time spent reviewing newspaper articles about KDOC are also unreasonable, again relying on the incorrect standard. [R. 69 at 4–5.] Human Rights Center argues these entries were reasonable as each of the articles related to either leadership changes in KDOC or other changes within KDOC facilities. [R. 70 at 4.] The entries themselves support this assertion by Human Rights Center and, on review, a total of 1.1 hours of time spent to determine the current leadership and policies of the very organization one is suing is sufficiently reasonable.

### 4

Next, Defendants argue that the request for "fees for compiling and mailing copies of the Amended Complaint to each individual Defendant on March 28, 2018" is unreasonable. [R. 69 at 5.] This objection appears to take issue with two entries by a paralegal, Kathy Moses, which total .3 hours charged for a total of $37.50, and read as follows: "Add recent mail out of Amended Complaint to KY DOC case expense spreadsheet" and "Meetings w/ DM re: mailout of Amended Complaints and tallying costs on expense sheet." [R. 66-1 at 83.] Defendants argue the fees requested in relation to these entries should not be awarded because "Plaintiff could have requested a waiver of service from counsel for the Defendants." [R. 69 at 5.] But the Court finds these entries do not warrant compensation for another reason: their clerical nature. *Miller*, 267 F. Supp. 3d at 996–97 (citation omitted) ("Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence."). The Court will reduce the total amount awarded by $37.50.

5

5

Next, Defendants take issue with Human Rights Center's entries relating to "time spent reviewing emails relating to new inmate subscribers." [R. 69 at 5.] Defendants argue that there is no indication any of these subscribers ever had their mail censored—the allegation that gave rise to this litigation—and thus these entries are unreasonable. *Id.* Human Rights Center responds that "[e]ven in the absence of censorship, information that publications were actually being delivered was also valuable, both in terms of determining the proper amount of damages and in determining the necessary scope of injunctive relief." [R. 70 at 5.] This explanation is persuasive. On review, a total of .9 hours spent over the course of two years of litigation to determine the extent of the alleged problem is undoubtedly reasonable.

6

Defendants' next argument—that fees related to Human Rights Center mailing the Settlement Agreement to prisoners were unreasonable—carries more weight. Defendants argue that these fees are unreasonable because (1) the terms of the injunctive Settlement Agreement already required Defendants to post copies at each institution in order to notify the inmate population, and (2), again citing the wrong standard, that providing individual copies to inmates "was not necessary to secure the final result obtained." [R. 69 at 6.] Review of the relevant Settlement Agreement supports Defendants' assertion that copies of the Agreement were to be posted in common areas at KDOC facilities. [*See* R. 50-1.] As such, it appears the parties already allocated the costs of notifying the prisoners of the Agreement. Further, Human Rights Center's explanation of the reasonableness of these fees largely amounts to concerns with regaining goodwill following Defendants' harmful actions. [R. 70 at 6.] It is unclear to the

Court how this type of undertaking is "reasonably expended in pursuit of success" in litigation. *Wooldridge*, 898 F.2d at 1177. The Court will reduce the overall amount awarded by $362.50.[2]

### 7

Defendants penultimate objection concerns "fees incurred after the case was moot." [R. 69 at 6.] Here, Defendants argue that "[f]ees incurred after the case is dismissed cannot be 'necessary to secure the final result obtained.'" *Id.* Defendants argument, although unclear, appears to concern two sets of entries: those entered after the March 26, 2019 Order approving the injunctive Settlement Agreement, and those entered after the July 17, 2019 Order approving the damages Settlement Agreement.

As to the first set of entries, the Court's Order which dismissed the injunctive relief claims explicitly stated that the Court was to retain jurisdiction in part for the purpose of enforcing the terms of the first Settlement Agreement. [R. 51.] This is mind, Human Rights Center argues that the disputed entries related to alleged violations of the injunctive Settlement Agreement and the time spent was to ensure the violations did not continue. [R. 70 at 6.] The case was still open at that time and the entries in this time period support Human Rights Center's explanation. These fees were reasonable.

As to the second set of entries, the same finding applies. The July 17, 2019 Order explicitly stated that the Court "shall retain jurisdiction for the purpose of enforcing the terms of the Settlement Agreement of Injunctive Claims [R. 50-1] and the Settlement Agreement of Damages Claim [R. 62-1]." [R. 63 at 1.] Human Rights Center's above explanation therefore applies in full to entries occurring after July 17, 2019. And, the three entries at issue in this post-July 2019 set are in line with the provided explanation. [R. 66-1 at 131.] These fee requests

---

[2] The two entries at issue total 2.9 hours expended at a rate of $125.00, for a total of $362.50. [*See* R. 66-1 at 114.]

were also reasonable.

8

Finally, Defendants argue broadly "[m]any of the Plaintiff's itemized billing entries include billing for clerical tasks such as filing pleadings, summarizing data onto spreadsheets, mailing letters, preparing summons, mailing copies of the Complaint and assembling documents." [R. 69 at 6.] As set out above, purely clerical tasks are not compensable as part of attorneys' fees requests. *Miller*, 267 F. Supp. 3d at 996–97 (citing *Jenkins*, 491 U.S. 274, 288 n. 10 (1989)). This encompasses "tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Id.*

The Court has reviewed the disputed entries and finds that Human Rights Center's explanations in response to this objection are largely unconvincing, save for the explanation as to one group of entries—entries related to "summarizing data on spreadsheets." Here, Human Rights Center argues that this paralegal work "required legal knowledge as to which returned items constituted unconstitutional censorship, and therefore should be included [on the spreadsheet], and which did not." [R. 70 at 7.] This explanation shows that the paralegals were required to exercise discretion on what to include and, further, that the data summarized was necessary to understand the full extent of the alleged unconstitutional conduct by Defendants. The fee requests associated with these entries were reasonable.

The remaining tasks that Defendants take issue with, however, are not compensable. Defendants' objection is generalized in nature and fails to point out specific entries by date. [*See* R. 69 at 6.] As such, the Court has simply reviewed the 134-page billing spreadsheet [R. 66-1] to determine which entries are, on their face, clerical in nature. *See Wooldridge*, 898 F. 2d at

8

1176. The Court has identified several such entries.[3] These entries took place on the following dates, and are identified further by the billing party, subject matter, and amount billed:

 (i) **July 17, 2017;** Moses; review email of summons; $12.50;

 (ii) **July 17, 2017**; Mutamba; reviewed summons; $27.50;

 (iii) **July 17, 2017**; Stevens; review emails re: filing of complaint (two entries); $37.50;

 (iv) **July 17, 2017**; Neelakanta; emails to and from co-counsel re: filing of complaint and service of summons; $97.50;

 (v) **July 18, 2017**; Stevens; prepare and mail out complaint and summons; $100;

 (vi) **March 7, 2018**; Marshall; review notice of filing of summons; $35.00;

 (vii) **March 27, 2018**; Moses; mailing complaint; $62.50;

 (viii) **March 27, 2018**; Mutamba; reviewed summons; $27.50;

 (ix) **March 28, 2018**; Moses; mailout of Amended Complaint (two entries); $37.50;

 (x) **March 28, 2018**; Moses; update spreadsheets; $125.00;

 (xi) **April 19, 2018**; Moses; revise postage calculations; $12.50;

 (xii) **June 4, 2018**; Moses; reviewing Casemap entries for US certified mail receipts (two entries); $37.50;

 (xiii) **November 8, 2018**; Moses; updating databases and preparing for "mass mail out"; $250.00;

 (xiv) **November 14, 2018**; Moses; spoke with prisoner who had not received Settlement Agreement mailout; $12.50; and

---

[3] Human Rights Center argues that "in today's court system, filing is no longer just a clerical task." [R. 70 at 8.] But it offers no support for this proposition and the distinctions made between filing before and after "the advent of electronic filing" are unpersuasive. *See id.* at 7. Filing remains a clerical task.

(xv)     **March 27, 2019**; Montag; logging expenses in spreadsheet; $12.50.

The fees requested from these clerical entries total $887.50—this amount will be reduced from the total awarded.  To the extent that Defendants may argue the Court should have identified more "clerical" entries, they have waived any such argument given their initial failure to identify the specific entries.  *Wooldridge*, 898 F.2d at 1176 n. 14.

In addition, Defendants argue that an entry in Gregory Belzley's time log constitutes impermissible "block billing."  [R. 69 at 7.]  The entry at issue reads: "Review, revise, and file Complaint; prepare and file summons and civil cover sheet; exchange emails with co-counsel re same, service of summons," and Mr. Belzley logged 2.3 related hours.  Certain of these tasks are undoubtedly clerical in nature—for example, filing summons—and thus not compensable.  Moreover, given the nature of the entry, the Court cannot decipher how the 2.3 hours were allocated and any attempt to do so would be complete guesswork.  Human Rights Center argues it cannot respond to Defendants' broader concern with block billing but does not even make an attempt on the one specific example pointed out by Defendants.  [R. 70 at 8.]  As such, the Court must reduce the amount awarded by $920.00, 2.3 hours at a $400 hourly rate.

## C

In addition to the fee request in Human Rights Center's initial motion, it now requests $4,072.50 in fees for work completed on the reply brief.  [R. 70 at 1; R. 70-1.]  In total, it requests compensation for 12 hours of work on the reply, 10.3 completed by Dan Marshall and 1.7 completed by Masimba Mutamba.  [R. 70-1.]  Given the nature of the eight-page reply brief, the Court finds this request to be slightly excessive.  Moreover, a significant portion of the briefing was dedicated to matters on which Defendants' objections were well-founded.  [*See, e.g.*, R. 70 at 6–8.]  Defendants should not be punished for lodging legitimate objections.

Accordingly, the Court will reduce the time claimed by Human Rights Center counsel by 50 percent. Human Rights Center will be compensated for 5.2 hours completed by Dan Marshall and .9 completed by Masimba Mutamba on the reply brief, for a total of $2,067.50.[4]

### III

Ideally on a request for attorneys' fees, "litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437. Here, although the parties agreed that Human Rights Center was entitled to reasonable fees, they failed to settle the amount of the fee itself. Consequently, the Court has stepped in to consider the requests and objections—both small and large—to determine a fair result. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Attorneys' Fees and Costs [**R. 66**] is **GRANTED in part** and **DENIED in part**;

2. Defendants **shall pay** Plaintiff a total of **$102,660.00** in attorneys' fees; and

3. Defendants **shall pay** Plaintiff a total of **$2,051.37** in costs.

This the 15th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge

---

[4] Mr. Marshall's 5.2 hours were completed at a rate of $350.00, for a total of $1,820.00; Mr. Mutamba's .9 hours were completed at a rate of $275.00, for a total of $247.50. [*See* R. 70-1.]